IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA            ]
                                    ]
v.                                  ]            No. 25-cr-50-01/05-SM-TSM
                                    ]
ZAIRE BRADDOCK                      ]
                                    ]

MOTION TO SUPPRESS

NOW COMES the defendant, Zaire Braddock, by and through his counsel, Dorothy E. Graham, and respectfully moves this Honorable Court to suppress all evidence obtained from a motor vehicle stop conducted in violation of the defendant's Fourth Amendment right to be free from unreasonable searches and seizures. In support, the defendant submits the following:

FACTS

A grand jury returned an indictment charging Mr. Braddock with Conspiracy to Commit a Hobbs Act Robbery.  On or about April 7, 2025, Londonderry Police responded to a commercial complex at Harvey Road for a report of a robbery.  An employee of GlowingGu Corp, a business that resells merchandise including purses, clothing, and footwear, reported that four or five men entered the building, zip tied her hands, and robbed her at gunpoint.  The individuals took merchandise, loaded the items into a small delivery truck and left the scene. The employee described the suspects as four to five males wearing masks and concealing their identities with hooded sweatshirts or hats. Neither the suspects nor the suspect vehicle was located at the scene.

Londonderry Police were able to access the camera security system inside the business,

which captured five individuals entering.  The first individual to enter was a black male (without a mask) holding a gun and wearing a hooded NASCAR sweatshirt. The other individuals had their faces covered or partially covered.  The suspects are seen opening boxes, packing items into bags, and then leaving with the merchandise.

On April 8, 2025, an individual, who had access to a security camera outside of the GlowingGu business, went to the Londonderry Police Department and provided the footage. The video captured a white Nissan parking at the commercial complex, individuals getting out of the Nissan, and then entering the business. The camera footage shows individuals carrying out items and loading them into a small yellow Penske truck.   The license plates for the Nissan (Pennsylvania) and Penske truck (Indiana) were visible.

When law enforcement disseminated the vehicle information, it was discovered that on April 7, 2025, at approximately 2:55pm, Massachusetts State Police Trooper Jared Layman had conducted a motor vehicle stop on the suspect Nissan at the Charlton Westbound Service Plaza while it was at a fuel pump.  The encounter with the occupants of the Nissan was captured on the trooper's body-worn camera. The trooper had the car's blue lights on and then parked in front of the Nissan, blocking its egress.  When the trooper approached the Nissan, there were three individuals sitting in the car – one in the driver's seat, one in the front passenger seat, and one in the rear passenger seat.  Two other individuals (one being Mr. Braddock) were standing outside of the Nissan.  The trooper asked the driver for his license and the car's registration.  The trooper asked who owned the license plate.  He also asked for the identification of the individuals outside of the car as well as those inside.  Mr. Braddock inquired why he needed to provide his name because he had done nothing wrong. The trooper stated he had smelled marijuana and wanted to ensure that the occupants were old enough to legally possess marijuana in

2

Massachusetts.[1]  They assured the trooper that no one had been smoking marijuana in the car. While he was collecting the identifications, he asked the individuals what they were "up to today."

The trooper claimed the plates were "dead."  The driver and passenger informed the trooper that they had rented the car from an individual, who they then called and placed on speaker phone for the trooper.  The owner of the car confirmed he had rented out his car and that it was registered in Pennsylvania.   The owner also stated that he had bought the car from CarMax and had registered the vehicle in Pennsylvania.  The trooper ran the VIN # and confirmed the plates and car were valid. The trooper then told the occupants they were all set to leave. There is no indication the trooper gave anyone in the car a citation or ticket.

During this stop, the trooper identified four of the five individuals in or near the Nissan. The rear passenger was never identified. Based on the trooper's interaction with these individuals, a review of the body camera footage, and a review of the security footage from the robbery, police identified Ferro, Johnson, Braddock, and Marquez Vera as four of the individuals who robbed the GlowingGu warehouse on April 7, 2025.

LAW AND ARGUMENT

The Fourth Amendment protects against unreasonable searches and seizures. All seizures must be reasonable. U.S. CONST. amend. IV. To pass muster a traffic stop must either be based on "probable cause to believe that a traffic violation has occurred," *Whren v. United States*, 517 U.S. 806, 810 (1996), or on "reasonably grounded" suspicion that "criminal activity is afoot." *Arizona v. Johnson*, 555 U.S. 323, 330. A traffic stop resulting in the detention of an automobile's

---

[1] According to Special Agent Tyler Delorme's affidavit dated July 7, 2025, the Trooper approached the Nissan because it did not have a front license plate and because of the front tinted window. Delorme asserted that "in addition, the trooper smelled marijuana and wanted to ensure that the Nissan's occupants were old enough to legally possess marijuana in Massachusetts."

3

occupants is a seizure under the Fourth Amendment. *United States v. Jones*, 700 F.3d 615, 621-22 (1st Cir. 2012).

Applying the standard here, a reasonable man in Braddock's position would have thought himself under arrest. He and his friends were parked at a gas pump and then blocked in by the trooper's car. When one occupant was walking outside the car, the trooper ordered him to come back and produce identification. Bodycam video depicts approximately two law enforcement officers were involved in this seizure. The occupants were asked for identification and questioned about "what they were up to." All these factors would lead a reasonable person to feel that they were not free to leave.

While the trooper explained on his body-worn camera that he was requesting identification of Braddock because he was investigating the smell of marijuana and furnishing to a minor, Agent Delorme asserted in his affidavit that the Trooper also approached the Nissan because it did not have a front license plate and it had a tinted front window. As for the lawfulness of the seizure based on the smell of marijuana, it is unclear from the body-worn camera whether the trooper smelled the odor of fresh or burnt marijuana and whether he did so prior to blocking in the Nissan. *See Commonwealth v. Rodriguez*, 37 N.E.3d 611, (2015)("we are disinclined to extend the rule that allows vehicle stops based on reasonable suspicion of a civil motor vehicle offense to stops to enforce the civil penalty for possession of one ounce or less of marijuana. Such stops are unreasonable; therefore, the stop in this case violated art. 14"). It is also unclear how or when the trooper suspected the occupants of the car were under 21 years old. In any case, the trooper did not appear to give a citation or arrest any of the occupants for furnishing marijuana to someone under the age of 21. See M.G.L.A. 94G § 13(i). Additionally, if the basis for the detention was premised on a violation of

4

M.G.L.A. 94G § 13(i), it is unclear how such a determination of said violation could occur if the trooper failed to obtain the identification of the rear passenger.

The stop/seizure was unlawful as the trooper lacked sufficient cause to believe that the Nissan or its occupants had violated the law.  First, the Nissan, registered in Pennsylvania, was not required to have a front license plate.  As a general rule, "[e]very registration plate shall, at all times, be securely fastened to the vehicle to which it is assigned or on which its use is authorized in accordance with regulations promulgated by the department." 75 Pa.C.S.A. § 1332(a).  Pursuant to Pennsylvania law:

> (a) *Single plate.* A single registration plate shall be located on the rear of the vehicle so as to be illuminated by the license plate light required by 75 Pa.C.S. § 4303(b) (relating to general lighting requirements), except that the registration plate of a truck-tractor shall be located on the front of the vehicle. 67 Pa. Code § 47.2.

Accordingly, it was not unlawful for the Nissan to have only a back plate.

Second, the trooper did not have probable cause to believe that a windshield tint violation occurred. While Pennsylvania law generally prohibits tinted windshields, exemptions or waivers exist. Pursuant to 75 Pa.C.S.A § 4524(e):

> 1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.
> (2) **This subsection does not apply to**:
> (i) A vehicle which is equipped with tinted windows of the type and specification that were installed by the manufacturer of the vehicle or to any hearse, ambulance, government vehicle or any other vehicle for which a currently valid certificate of exemption has been issued in accordance with regulations adopted by the department.
> (ii) A vehicle which is equipped with tinted windows, sun screening devices or other materials which comply with all applicable Federal regulations and for which a currently valid certificate of exemption for medical reasons has been issued in accordance with regulations adopted by the department.
> (3) A certificate of exemption shall be issued by the department for a vehicle which is:
> (i) Registered in this Commonwealth on the effective date of this subsection and is equipped with a sun screening device or other material prohibited under paragraph (1) on the effective date.

5

(ii) Equipped with tinted windows, sun screening devices or other materials for a physical condition that makes it necessary to equip the motor vehicle with sun screening material which would be of a light transmittance or luminous reflectance in violation of this section.

(A) A certificate of exemption for medical reasons shall be issued only if the owner or registrant of the vehicle, or a person residing in the household of the owner or registrant who regularly drives or is driven in the vehicle, suffers from a physical condition determined by the department, in consultation with the Medical Advisory Board, to justify the exemption.

(B) Any person requesting an exemption for medical reasons shall have his physical condition certified to the department by a licensed physician or optometrist.

(4) A certificate of exemption issued under this subsection shall be carried in the vehicle and displayed on request of a police officer. (emphasis added).

The trooper lacked sufficient basis to conclude that the car's tinted windows were not of the type and specification that were installed by the manufacturer of the vehicle or that driver did not have a waiver and was operating unlawfully.

When law enforcement violate the Fourth Amendment's prohibition on unreasonable searches and seizures, the government may be forbidden from using the improperly obtained evidence at trial. The search warrant for Braddock's phone and his arrest were predicated upon observations the trooper made after he illegally detained the occupants of the Nissan in violation of the Fourth Amendment, including but not limited to the plate number, the images from the trooper's body camera, and his observations of the identifying features of the occupants. Thus, the evidence uncovered during the seizure is fruit of the poisonous tree" and must be suppressed. *Wong Sun v. United Sates*, 371 U.S. 471, 488 (1963) (when challenged evidence is acquired by police after some initial Fourth Amendment violation, evidence is "fruit of the poisonous tree" when it has been come at by exploitation of that illegality).

WHEREFORE, the Defendant respectfully requests that the Court suppress the fruits of the unlawful seizure or schedule a hearing on the matter.

The government, through AUSA Anna Krasinski, objects.

6

Respectfully submitted,

Dated: March 17, 2026

/s/ Dorothy E. Graham
Dorothy E. Graham
N.H. Bar #11292
Assistant Federal Public Defender
22 Bridge Street
Concord, NH 03301
Dorothy_Graham@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on March 17, 2026, and in the manner specified herein: electronically served through CM/ECF to AUSA Anna Krasinski.

/s/Dorothy E. Graham
Dorothy E. Graham

7